UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

Present: The Honorable   JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE DEFENDANT WANG'S MOTION FOR
SUMMARY JUDGMENT (DKT. 62); CITY DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DKT. 79)**

## I.    Introduction

Lois Goodman ("Plaintiff" or "Goodman") brought this action against the Los Angeles Police Department
("LAPD"), LAPD Officers Jeffrey Briscoe, Nick Pikor, David Peteque, and Pamela Pitcher,[1] Los Angeles
County,[2] and Los Angeles County Coroner Dr. Yulai Wang ("Wang"). *See* First Amended Complaint
("FAC"), Dkt. 6. Plaintiff alleges a violation of 42 U.S.C. § 1983 for false arrest against LAPD, LAPD
Officers, and Wang, malicious prosecution against all Defendants, *Monell* liability[3] against LAPD and
the Los Angeles County Coroner[4] ("Coroner") and intentional infliction of emotional distress against all
Defendants. *See id.*

Wang and the City Defendants filed separate motions for summary judgment. Wang Mem., Dkt. 62;
City Mem., Dkt. 79. Plaintiff filed a consolidated Opposition to these motions ("Opp."), Dkt. 98. Wang
(Wang Reply, Dkt. 124) and the City Defendants (City Defendants' Reply, Dkt. 122) each replied.

A hearing on these motions was conducted on January 26, 2015, and they were taken under
submission. Dkt. 128. Subsequently, Plaintiff and City Defendants each submitted a "joint statement."
Plaintiff's Joint Statement ("PJS"), Dkt. 135; City Defendants' Joint Statement ("CDJS"), Dkt. 136.

For the reasons set forth in this Order, each motion for summary judgment is **GRANTED.**[5]

---

[1] The LAPD and LAPD Officers are collectively referred to as "City Defendants." LAPD Officers Briscoe, Pikor,
Peteque and Pitcher are referred to collectively as "LAPD Officers."
[2] Los Angeles County was incorrectly named as the Los Angeles County Department of Coroner. *See* First
Amended Complaint, Dkt. 6.
[3] *Monell v. Dep't Soc. Servs. of City of New York*, 436 U.S. 658 (1978).
[4] The Monell claim against the Los Angeles County Coroner was subsequently dismissed with leave to amend.
Dkt. 20. No amended complaint was filed.
[5] The rulings on the evidentiary objections made in connection with the motions will follow in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

**II.    Factual Background**

A.    Decedent's Death

Plaintiff alleges that, on April 17, 2012, she returned home from work and discovered that her 80-year-old husband ("Decedent"), to whom she had been married for 49 years, was deceased; his body was on the bed in their bedroom. FAC ¶1. Plaintiff observed blood in the kitchen, on the stairway that led to the bedroom and in the bedroom. *Id.* ¶ 1. Plaintiff also noticed a broken coffee cup on the carpeted landing of the stairway. Wang Statement of Genuine Facts ("Wang SGF"), Dkt. 118, ¶ 8. Plaintiff states that she reached down to touch the mug when she saw it, but does not know what caused her to do so. City Defendants' Statement of Genuine Facts ("City Defendants' SGF"), Dkt. 122, ¶ 100. After discovering Decedent's body, Plaintiff called 911. The Los Angeles Fire Department ("LAFD") arrived shortly thereafter. Wang SGF ¶ 10. The examination of the Decedent by the LAFD revealed that his body was cold and rigor mortis had commenced. *Id.* ¶ 14.

Shortly thereafter, a unit from the Los Angeles Police Department was contacted regarding the investigation. *Id.* ¶ 20. The LAPD contacted the Coroner several times to request that a person from that office go to the scene to examine the Decedent's body. An LAPD officer described to the Coroner's office the scene at the residence, including the broken coffee cup and the presence of blood. However, the Coroner's office declined to send a representative to the scene to investigate. *Id.* ¶246.

Photographs of the following items and views were taken by one of the first two LAPD officers who responded to the scene: (1) the coffee cup on the stairs, (2) the blood on the hand rails of the staircase; (3) the view from the top staircase toward the coffee mug; and (4) the body of the Decedent on the bed. *Id.* ¶ 22. The LAPD released the body for transfer to a mortuary. *Id.* ¶ 23. Decedent was transferred to the mortuary the same night. *Id.* ¶ 25. There was no evidence that, prior to Plaintiff's discovery of Decedent, any person had entered the residence without permission, that any of the contents of the residence had been disturbed, or that any property had been taken from the residence. *Id.* ¶ 21.

B.    The LAPD Homicide Investigation

The LAPD homicide investigation and the Coroner's investigation as to the death of Decedent were conducted simultaneously. City Defendants' SGF ¶ 73. LAPD Detectives interviewed many witnesses, prepared requests for the issuance of search warrants, which were approved and executed, and collected other evidence. *See id.* ¶¶ 79-82, 88, 107. The City Defendants also collected physical evidence, including blood samples, clothing, bedding, notes and a printed copy of an email from Plaintiff to David Martinez, who is her friend and colleague. *Id.* ¶ 108.

Through their investigation LAPD Detectives learned that the Decedent was a patient of Dr. Erhart, who worked at the V.A. Hospital. They also learned that Erhart previously had completed an Adult Protective Services report as to Decedent, in which he identified Plaintiff as a person potentially responsible for neglecting Decedent. *Id.* ¶ 93. As part of the investigation into the death of Decedent, LAPD officers interviewed Plaintiff on three different occasions. *Id.* ¶ 97. In two of these interviews, Plaintiff described the scene at the resident as "violent looking" and made statements to the effect that, had she been home at the relevant time, she could have been killed. *Id.* ¶¶ 104, 106.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

C.      The Autopsy

On April 20, 2012, Mario Sainz ("Sainz"), a Deputy Coroner Investigator employed by the Coroner, examined Decedent's body. Wang SGF ¶ 26. After Sainz used a wet towel to wipe off some of the dried blood on the body, he saw more lacerations on Decedent's face. *Id.* ¶ 27. Sainz manipulated the Decedent's joints to locate any fractures or dislocations of bones or joints, but found none. *Id.* ¶ 29. Sainz ordered Decedent's body transferred to the Coroner's office after completing his examination. *Id.* 36.

Decedent's case was then assigned to Deputy Coroner Investigator Kim Pavek. *Id.* ¶ 38. She began her work on April 23, 2012. *Id.* ¶ 38. She first reviewed the Coroner's case notes. *Id.* ¶ 39. She prepared an "Investigator's Narrative," in which she noted the following: (1) Decedent was found in his bed without a pulse or respiration; (2) he was dead at the time that the LAFD arrived at the scene; (3) he had positive rigor and lividity; (4) there were two lacerations visible on his right temporal, forehead region; (5) halfway up a stair case in the residence there were signs of blood loss from some type of injury to Decedent caused by trauma; (6) according to Plaintiff, the Decedent appeared to have made his way up the stairs and into the bedroom and there was a blood trail on the carpet; (7) the Decedent's body had been left in place by Plaintiff when it was released to the LAPD; (8) the LAFD officers, who arrived first at the scene, informed the responding LAPD officers who arrived later that they believed the scene was "suspicious" due to an oddly shaped cut to the right side of Decedent's head and as a result, they did not move Decedent's body; (9) a neighbor heard arguing between a male and female the day prior to Decedent's death in a residence to the west of her residence; (10) there were neither signs of a forced entry into the residence nor any indication that any property had been taken from the residence; (11) on the day Plaintiff discovered Decedent, she reported being away from the residence between 1:15 p.m. and 7:00 p.m.; and (12) upon her return at 7:00 p.m., Plaintiff reported noticing blood on the floor leading to the staircase, a broken coffee mug on the floor covered in blood, and more blood on the stairs leading to the bedroom where she found Decedent lying in their bed covered in blood and not breathing. *Id.* ¶¶ 42, 44.

On April 24, 2012, Decedent's autopsy was assigned to forensic pathologist Dr. Adrian Marinovich ("Marinovich"). It was to be performed under the supervision of Wang. *Id.* ¶ 47. Wang was not involved in the decisions to transfer Decedent from the mortuary and to assign the autopsy to Marinovich. Wang was not aware of Decedent until April 24, 2012. *Id.* ¶¶ 49-50. Wang reviewed the Investigator's Narrative prepared by Pavek. *Id.* ¶ 51.

An autopsy was performed, and a report followed. *See id.* ¶ 56. Photographs were taken before and during the autopsy. *Id.* ¶ 57. These include photographs of the Decedent's face and oral cavity, some with a denture removed. *Id.* ¶ 60. One photograph shows a lesion or cut in Decedent's mouth. *Id.* ¶ 61. As part of the description of the external investigation, the autopsy report states: "Upper denture and lower teeth are present. There is a 1 x 3/4" hyperemic area in the upper buccal gingiva region, consistent with inflammation." *Id.* ¶ 58.

The number of injuries to Decedent is contested. Wang maintains that Decedent sustained 17 sharp force injuries. *Id.* ¶ 66. The size of these wounds varies. *Id.* ¶ 67. The autopsy report does not refer to the absence of defensive wounds. *Id.* ¶ 424. It does describe other trauma that Decedent sustained, including an abrasion of the bridge of his nose, an abrasion of the right hand dorsum, two contusions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

fingers on the right hand, an abrasion on the left hand dorsum, an abrasion of the right knee and a superficial skin avulsion of the right lower leg. *Id.* ¶ 168. The report does not state whether these injuries are consistent with an accidental fall. *Id.* ¶ 426.

Wang has declared that, at the time of autopsy, it was his preliminary opinion that Decedent's death was not the result of natural causes and that Decedent's injuries were not consistent with an accidental fall on a mug. *Id.* ¶¶ 84, 85. Wang also declares that he had concluded at that time that some further investigation was necessary to determine the cause of death. *Id.* ¶ 88. This included "histologic (*i.e.,* microscopic) examination, lab studies, neuropathology consultation, review of medical records and acquisition of more information about the circumstances surrounding the death, including the death scene." *Id.* ¶ 89. Wang deferred making a final determination regarding the cause or manner of death. *Id.* ¶ 90. On April 30, 2012, Marinovich sent an email to Briscoe and Pikor to request the crime scene photographs; they were provided to him on or about May 2, 2012. *Id.* ¶¶ 92- 93. They showed that Decedent lost a significant amount of blood at the scene, which supported a finding that the cause of death was "hypovolemic shock." *Id.* ¶ 96.

After completing the autopsy, Wang and Marinovich were unable to make a final determination regarding the cause or manner of death. Consequently, the report stated that the determination as to the cause of death had been "deferred" and that the manner of death as "pending investigation." *Id.* ¶ 306. Wang and Marinovich state that, in order to make these determinations, they had decided to wait for the results of five further studies: (1) tissue histology; (2) neuropathy; (3) medical history; (4) toxicology; and (5) additional scene investigation. *Id.* ¶307. Wang signed the autopsy report on August 7, 2012. *Id.* ¶ 413. The death certificate was last amended on August 21, 2012. *Id.* ¶ 310. Ultimately, the manner of death was changed from "pending investigation" to "homicide." *See id.* ¶ 415.

       D.      The Underlying Criminal Proceedings

On August 14, 2012, Defendants Peteque and Briscoe presented information about the death of Decedent to Deputy District Attorney Lisa Tanner, and suggested that Plaintiff was the person responsible. *See* City Defendants' SGF ¶¶ 121, 123. Tanner reviewed the matter for one to two hours and then filed a Felony Complaint for Arrest Warrant for one count of Cal. Penal Code §187(a), "Murder" against Plaintiff. *Id.* ¶ 123. Briscoe drafted a declaration in support of the proposed arrest warrant, which stated that the basis for the request was the review of five notebooks comprising the "Murder Book." *See* Briscoe Declaration ("Briscoe Decl.") Dkt. 79-4 ¶ 31 at Ex. D, Warrant Declaration. Tanner has testified that, based on her own legal experience, and not on what the detectives may or may not have told her, she concluded that the arrest warrant should be requested. Dkt. 79-2 at Ex. J, Deposition of Lisa Tanner ("Tanner Depo.") at 70. The request was presented to Los Angeles Superior Court Judge Dohi. On August 14, 2012, he issued the arrest warrant and a request for extradition. City Defendants' SGF ¶ 128.[6] Following the issuance of the warrant, Peteque and Briscoe arrested Plaintiff in New York as she left the hotel where she was staying. At the time of her arrest, Plaintiff was wearing the uniform she was to use that day as a referee at the U.S. Open Tennis Tournament, which was then underway in New York. *Id.* ¶¶ 135, 433.

---

[6] LAPD Defendants state that they sought the extradition order because they believed Plaintiff would be traveling from California to New York, where she might remain for several weeks. *See* City Defendants' SGF ¶¶ 131, 413.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
| Title | Lois Goodman v. Los Angeles Police Department | | |

In October 2012, the Los Angeles District Attorney retained Tom Bevel, an Oklahoma-based crime scene reconstruction and bloodstain pattern analysis expert. Bevel was directed to review the evidence in the case in which Plaintiff had been charged. *Id.* ¶ 524. After examining the evidence, Bevel opined that he did not see staining consistent with a striking of Decedent. *Id.* ¶ 528; Ankur Tarneja Declaration ("Tarneja Decl."), Dkt. 99-103 at Ex. 20, Tom Bevel Deposition ("Bevel Depo."). Approximately one month later, in November 2012, the Los Angeles District Attorney retained Dr. Frank Sheridan, who is the San Bernardino Chief Medical Examiner, to prepare a report as to the cause of death of Decedent. City Defendants' SGF ¶ 558. Sheridan reviewed the autopsy findings, prepared a report and provided it to the District Attorney as requested. In it, he opined that Decedent's "death was an accident." *Id.* ¶ 562; Tarneja Decl. at Ex. 82, Dr. Sheridan Report at 3.

On November 30, 2012, the District Attorney dismissed the criminal case against Plaintiff without prejudice "in order to consult with additional experts and further investigate the case." *Id.* ¶ 572. After dismissal of the case, in December 2012, the LAPD Chief of Police issued a press release; it stated that the investigation was ongoing. *Id.* ¶574. Since then, the LAPD Defendants have sought and obtained another search warrant, sought the opinion of another forensic pathologist and analyzed the results of DNA analysis of the blood found in Plaintiff's home. *Id.* ¶¶ 575-578. An internal LAPD investigation was conducted between April 2013 and March 2014. It determined that none of the LAPD officers should be disciplined in connection with their work in connection with the investigation of the death of Decedent. *Id.* ¶ 579. No evidence has been presented as to any ongoing investigative or other actions.

E.     Plaintiff's Contentions

Plaintiff claims that, following the death of Decedent, she was improperly arrested and falsely charged with causing his death. As noted, this charge has been dismissed. In support of this claim, she alleges that certain defendants in the homicide investigation made false statements and corresponding false findings. She also claims that certain defendants were responsible for making false statements in connection with the autopsy of the Decedent. *See, e.g.,* FAC ¶¶ 9, 15, 41, 44, 58, 60, 83. For example, she claims that Wang made false statements in the autopsy report by omitting some and misstating other critical information. *Id.* ¶¶ 15, 41, 52-56, 63-68, 69-73.

The Complaint alleges that the City Defendants falsified police reports. It adds that they were later presented to the District Attorney as part of the process of determining whether Plaintiff would be charged in connection with the death of the Decedent. *Id.* ¶¶ 44, 52-56, 63-68, 69-73. In support of this allegation, Plaintiff claims that these police reports included false statements and omitted exculpatory facts. *Id.* ¶ 44, 65.

Plaintiff also alleges that, because the LAPD failed to take any action to remedy the improper conduct of the other Defendants, it ratified that conduct. *Id.* ¶ 58. Plaintiff also claims that the improper conduct of the LAPD officers was the result of official policies, practices and procedures of the LAPD as well as its methods of training officers. *Id.* ¶ 60. Plaintiff claims that she suffered damages as the result of these official LAPD policies, practices, procedures and customs. *Id.* ¶¶ 57-62. She also alleges that, due to her false arrest, she suffered severe emotional distress. *Id.* ¶¶ 69-73. Plaintiff also asserts that she remains unable to collect life insurance benefits that were payable upon the death of Decedent because of her alleged status as a "suspect" in his death. City Defendants' SGF ¶ 580.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

III.    **Analysis**

    A.    Whether Summary Judgment is Appropriate

        1.    Legal Standard

A motion for summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the basis for its motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Where the moving party will have the burden of proof on an issue at trial, that party must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, the movant can prevail by pointing out that there is an absence of evidence to support the nonmoving party's claims. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(e). In considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

      2.    <u>Application</u>

          a)    Plaintiff's False Arrest Claims[7]

              (1)    <u>Legal Standards</u>[8]

                    (a)    False Arrest

"[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond,* 885 F.2d 1384, 1391 (9th Cir. 1988); *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126-127 (9th Cir. 2002) (coroner who "deliberately lied about the autopsy in the autopsy report" potentially liable under § 1983) and *Barlow v. Ground,* 943 F.2d 1132, 1136-137(9th Cir. 1991) (police officers may be held liable under § 1983 "if they made false reports to the prosecutor, omitted material information from the reports, or otherwise prevented the prosecutor from exercising independent judgment")). However, probable cause is an absolute defense to a claim of false arrest. *See Smith v. Almada,* 640 F. 3d 931, 944 (9th Cir. 2011). "[P]robable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." *United States v. Noster,* 590 F.3d 624, 629-30(9th Cir. 2009); *United States v. Smith,* 790 F.2d 789, 792 (9th Cir.1986) (same); *see also United States v. Morgan,* 799 F.2d 467, 469 (9th Cir.1986). "'The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law.'" *Stewart v. Sonnenborn*, 98 U.S. 187, 194 (1878) (quoting *Sutton v. Johnstone*, 1 T.R. 493).

"To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Smith,* 640 F.3d at 937 (quoting, in part *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir.2004)); *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir.2004) ("To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.") (citing *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir.2002)). "To survive summary judgment on a claim

---

[7] One of the issues presented by the motions is whether Plaintiff may assert a Fourteenth Amendment claim based on false arrest or malicious prosecution. *See* City Defendants' Mem. at 11, 15; Opp. at 32 n.3. Without deciding the issue, the Court notes that Plaintiff's Fourteenth Amendment claim is congruent with her Fourth Amendment and state law claims for false arrest and malicious prosecution. As explained below, those claims fail as a matter of law. Therefore, this Order does not include a separate analysis and determination with respect to whether a claim for false arrest or malicious prosecution may be pursued under the Fourteenth Amendment. It is not necessary to reach that issue.

[8] The tests for probable cause for a search and an arrest warrant are the same. *See, e.g., Ewing v. City of Stockton,* 588 F.3d 1218, 1223-224 (9th Cir. 2009) (applying, in part, reasoning from *Galbraith* (arrest warrant) to analyze whether probable cause existed for search warrant). This same principle applies in analyzing qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 344 n.6 (1986) ("Although the case before us only concerns a damages action for an officer's part in obtaining an allegedly unconstitutional arrest warrant, the distinction between a search and an arrest warrant would not make a difference in the degree of immunity accorded the officer who applied for the warrant.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | | |
|---|---|---|---|---|
| Case No. | LA 2:13-CV-05959-JAK-MAN | | Date | April , 2015 |
| Title | Lois Goodman v. Los Angeles Police Department | | | |

of judicial deception, a § 1983 plaintiff need not establish specific intent to deceive the issuing court. Rather, the plaintiff must (1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause, and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083-084 (9th Cir. 2011) (internal citations omitted); *Sarmiento*, 77 F. App'x at 934 ("In *Franks*, the Supreme Court held that a police officer violates the Fourth Amendment if he "recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit [.]"") (quoting, in part, *Mendocino Env'tl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1295 (9th Cir. 1999)); *Franks*, 438 U.S. at 155-56 ("[I]f the allegedly false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded.").

Whether a false or omitted statement was "material" to the finding of probable cause is a question of law. *KRL*, 384 F.3d at 1117; *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002); *Smith*, 640 F.3d at 937 ("materiality element . . . [is] a question for the court"). "'To determine the materiality of omitted facts, [a court first] consider[s] 'whether the affidavit, once corrected and supplemented, establishes probable cause.'" *Bravo*, 665 F.3d at 1083-084 (quoting, in part *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) and relying on *Liston v. Cnty of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997)); *Smith*, 640 F.3d at 937 ("The materiality element—a question for the court, [citation omitted]—requires the plaintiff to demonstrate that 'the magistrate would not have issued the warrant with false information redacted, or omitted information restored.'") (quoting, in part, *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir.1997)); *accord Liston*, 120 F. 3d at 972-75 (plaintiff must establish that but for the defendant's dishonesty or omission, the magistrate judge would not have issued the warrant). "Whether the alleged judicial deception was brought about by material false statements or omissions is of no consequence." *Liston*, 120 F.3d at 973 (relying on *U.S. v. Stanert*, 762 F.2d 775, *as amended*, 769 F.2d 1410 (1985)). "If probable cause remains after amendment, then no constitutional error has occurred." *Bravo*, 665 F.3d at 1084 (relying on *Ewing*, 588 F.3d at 1224; *Liston*, 120 F.3d at 973–74.).

If a plaintiff makes "the required 'substantial showing,' [that the officer intentionally or recklessly omitted the information] the question of intent or recklessness is 'a factual determination for the trier of fact.'" *Liston*, 120 F.3d at 974 (quoting, in part *Hervey*, 65 F.3 at 789). "To survive summary judgment, [a plaintiff] need only make a substantial showing of a deliberate or reckless omission, not provide 'clear proof.'" *Bravo*, 665 F.3d at 1087 (quoting, in part *Liston*, 120 F.3d at 974 (internal quotation marks omitted)). Summary judgment is improper where "there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do." *Id.* (quoting, in part, *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009)); *Bravo*, 665 F.3d at 1087 (summary judgment improperly granted where "a reasonable jury could conclude that [officer] intentionally or recklessly omitted the two-year-sentence information from the affidavit, and the Bravos presented ample evidence to support that inference."); *see also, Butler*, 281 F.3d at 1024 ("[S]tate of mind is for the jury.") (citing *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995)).

A plaintiff has a viable false arrest claim against prosecutors and others -- including police officers and investigators -- who wrongfully caused an arrest. *See Galbraith*, 307 F.3d 1119 (9th Cir. 2002). "[A] coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment." *Id.* at 1126. To be "reckless" under this standard, a misstatement must be more than "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
| --- | --- | --- | --- |
| Title | Lois Goodman v. Los Angeles Police Department | | |

result of simple negligence or inadvertence." *U.S. v. Davis*, 714 F.2d 896, 899 n.5 (9th Cir. 1983).

(b)     Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009). The "modern qualified immunity doctrine protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Heien v. North Carolina*, 135 S. Ct. 530, 541 (2014) (quoting, in part *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)). California "[s]tate law likewise provides qualified immunity from claims of false arrest if an officer had 'reasonable cause to believe such arrest was lawful' when made." *Troutwine v. Nevada Cnty*, 990 F.2d 1261, at *1 (9th Cir. 1993); Cal. Gov. Code § 847(b)(1);

The determination whether a qualified immunity defense is viable requires a two-step analysis:

> First, a court must decide whether the facts that a plaintiff has alleged (*see* Fed. R. Civ. P[roc.] 12(b)(6), (c)) or shown (*see* Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis [to] address[] first in light of the circumstances of the particular case." *Id.* at 231.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.' . . . [The Supreme Court] do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083 (quoting, in part, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The plaintiff bears the burden of showing that the right at issue was clearly established under . . . ." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "[I]t will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only." *Id.* at 971.

"In a garden-variety false arrest claim challenging the probable cause for an arrest, if the arrest warrant is facially valid, the arresting officer enjoys qualified immunity unless 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existing unreasonable . . . .'" *Smith*, 640 F.3d at 937 (quoting, in part *Malley v. Briggs*, 475 U.S. 335, 344–45, (1986); *see also KRL*, 512 F.3d at 1190 ("[A]n officer who prepares or executes a warrant lacking probable cause is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant.").

The relevant inquiry is whether, given the specific circumstances, a reasonable officer would believe the conduct was lawful, not whether the end result of those actions was or was not a constitutional violation. *Newell v. Sauser*, 79 F.3d 115, 118 (9th Cir. 1996) ("Even if a constitutional violation has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

occurred, an officer will be immune from suit if he 'objectively could have believed that his conduct was lawful.'") (quoting, in part, *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993));. "'Whether or not a reasonable officer would have known that his or her conduct violated clearly established law 'is not itself a factual issue that can preclude summary judgment.'"" *Newell*, 79 F.3d at 118 (quoting *Alexander v. City & Cnty of San Francisco*, 29 F.3d 1355, 1364 (9th Cir. 1994) (quoting, in part, *Act Up!/Portland*, 988 F.2d at 873)).

Further, "[t]he liability of a public entity . . . is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person." Cal. Gov. Code § 815(b). The public entity is not liable for the acts or omissions for which its employee is immune. Cal. Gov. Code § 815.2(b) ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."); *Robinson v. Solano Cnty*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California . . . imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it [also] grants immunity to counties only where the public employee would also be immune.") (relying on Cal. Gov. Code § 815.2).

A coroner who performs an autopsy for a government body acts under the color of state law. *See Lawyer v. Kernodle*, 721 F.2d 632, 635 (8th Cir. 1983). A coroner who exercises professional judgment and discretion in performing this work is entitled to qualified immunity. *Id.* (coroner was entitled to qualified immunity because, "in performing the autopsy of [Decedent] for [the] County, [he] was acting under color of state law and was exercising his professional judgment and discretion.").

    (2)    <u>Application</u>

        (a)    Plaintiff's False Arrest Claims Against City Defendants

Plaintiff argues that there was no probable cause for her arrest because "'under the totality of the circumstances known to the arresting officers, a prudent person would [not] have concluded that there was a fair probability that [Plaintiff] had committed a crime.'" *See* Opp. at 29-32 (quoting, in part, *Smith*, 790 at 792). Plaintiff identifies several facts that she claims were falsified or omitted in connection with the application for the arrest warrant. *Id.* at 20-23, 32. She claims that, had these facts been stated correctly in the application, no reasonable bench officer would have concluded that there was a "fair probability" that Plaintiff committed the crime. *Id.* This argument is unpersuasive.

The evidence as to allegedly "falsified" facts to which Plaintiff refers shows no more than a difference in the interpretation of the facts that were presented in connection with the application for the warrant. Plaintiff cites what she claims to have been false statements provided to the District Attorney. *See* Wang SGF ¶¶ 506-522. However, the only support for these claims are Plaintiff's conclusory assertions to that effect. *See, e.g.*, *id.* ¶ 506 ("LAPD Defendants' Follow-Up Investigation Reports . . . provided to the District Attorney and to the Los Angeles Superior Court falsely state that that [sic] the LAPD officers who investigated at the Goodman home on April 17, 2012 'classified the cause of death as 'undetermined'' when in fact they classified the cause of death as 'accidental.'"); *id.* ¶ 507 ("LAPD Defendants' Follow-Up Investigation Reports that they provided to the District Attorney and to the Los Angeles Superior Court falsely stated that that [sic] Alan Goodman had colon cancer."); *id.* ¶ 508 ("LAPD Defendants' Follow-Up Investigation Reports . . . provided to the District Attorney and to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

Los Angeles Superior Court falsely stated that that [sic] Alan Goodman required constant care and medical assistance."); *id.* ¶ 512 (LAPD Defendants' Follow-Up Investigation Reports . . . provided to the District Attorney and to the Los Angeles Superior Court falsely state that that [sic] Mrs. Goodman was frequently away and unavailable to provide the proper care that Alan Goodman required."). Plaintiff fails to provide any supporting evidence as to these matters. *See id.* ¶ 507 (citing evidence containing statements that Decedent had colon cancer but failing to provide evidence demonstrating he did not have colon cancer or otherwise disputing that fact); *id.* ¶ 522 (claiming Defendants falsely claimed Wang and Marinovich determined during the autopsy that Decedent's injuries were not consistent with a fall, but not citing any evidence supporting that conclusion).

Furthermore, some of what Plaintiff designates as "supporting evidence" for her claims that false facts were presented does not relate to what she claims to have been "false." *Compare id.* ¶ 506 (asserting LAPD Follow-Up Investigation Reports falsely stated that LAPD officers who investigated on April 17, 2012, classified the cause of death as "undetermined" when they in fact classified it as "accidental"), *with* Tarneja Decl. at Ex. 32, 6/13/12 Follow Up Report (making no mention of how the LAPD officers classified that death as on April 17, 2012).[9] In some instances, the "supporting evidence" cited by Plaintiff to validate the claim that Defendants made false statements demonstrates the contrary. *Compare id.* ¶ 506 (claiming that, on April 17, 2012, LAPD officers classified death as "accidental," but later claimed the officers classified it as "undetermined") *with* Tarneja Decl. at Ex. 17, April 17, 2012 LAPD Death Investigation Report (classifying death as "undetermined"). Elsewhere the basis for Plaintiff's argument is the characterization of a fact. *See, e.g., id.* ¶ 513 (disputing whether Plaintiff "cut short" interview, claiming she previously had told Defendants she had to work and they had promised she would not be late).[10]

An analysis of the allegedly "omitted, exculpatory" facts leads to the same conclusion. None is material to whether there was probable cause to issue the arrest warrant. For example, Plaintiff asserts that Defendants' failure to interview her rheumatologist, who called Plaintiff at 2:30 p.m. on the day of Decedent's death, is material. *See* Wang SGF ¶ 541. Although such information could have been germane to Judge Dohi in connection with his decision, it is well established that "'[t]he government

---

[9] There are several additional examples of this shortcoming in Plaintiff's proffer as to claimed factual disputes. *Compare* Wang SGF ¶ 511 (asserting Defendants falsely stated Decedent was unable to prepare meals) *with* Tarneja Decl. at Ex. 35, Rajeev Datt Statement (interview of fellow tennis umpire, regarding his relationship with Plaintiff, but not discussing Decedent's abilities or restrictions) and Ex. 38, Lee Ung Statement (regarding her interaction with Plaintiff and her habits as to nail appointment, but not discussing Decedent's abilities or restrictions); *compare* Wang SGF ¶ 507 (asserting Defendants falsely claimed Decedent had colon cancer), *with* Tarneja Decl. at Ex. 4, Interview of Plaintiff (discussion regarding visit by David Martinez and Decedent's interaction and Decedent's failing eyesight) and Ex. 32, June 13, 2012 LAPD Follow Up Report (no mention whether Decedent had colon cancer), and Ex. 51, August 2, 2012 LAPD Follow Up Report (same); and *compare* Wang SGF ¶ 522 (assertion that Defendants falsely claimed Wang and Marinovich determined during the autopsy that Decedent's injuries were not consistent with a fall), *with* sole proffered evidence of Tarneja Decl. Ex. 78, LAPD Scientific Investigation Discovery Report (regarding testing of cutting from jeans, and portion of swab of mug with Decedent's blood sample).

[10] *See also id.* ¶ 512 (disputing whether Plaintiff was frequently away and unable to care for Decedent, but not whether medical record noted "wife works as a tennis umpire and is away from home for weeks at a time officiating tournaments . . . . Besides his wife, he has little family/social support"); *id.* ¶ 507 (disputing whether Decedent had colon cancer, but not that Decedent had a history of colon cancer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

need not include all of the information in its possession to obtain a search warrant . . . . The omission of facts rises to the level of misrepresentation only if the omitted facts 'cast doubt on the existence of probable cause.'" *Ewing*, 588 F.3d at 1226 (quoting *United States v. Johns*, 948 F.2d 599, 606-07 (9th Cir.1991)); *see also United States v. Streich*, 759 F.2d 579, 586 (7th Cir.1985) (noting that *Illinois v. Gates*, 426 U.S. 213 (1983), does not require officers to apprise a judicial officer of everything); *United States v. Luciano*, 785 F. Supp. 878, 881 (D.Mont.1991) ("Certainly, an investigating officer cannot be expected to include the sum total of all of his investigation in the affidavit supporting a search warrant.").[11]

Some of the matters that Plaintiff claims were omitted that are exculpatory are based on an interpretation of facts that were presented. *See, e.g.*, Wang SGF ¶ 536 (claim that photographs from April 17, 2012, show no blood spatter); Tarneja Decl. Ex. 18 (one of four photographs of crime scene) and Jacobs' Declaration ("Jacobs' Decl."), Dkt. 64 at Ex. D (photographs of scene taken by LAPD on April 17, 2012); and *compare* Wang SGF ¶ 526 (claim Defendants omitted fact that no LAPD officer or detective present at Plaintiff's home on April 17, 2012, found evidence of a physical struggle involving Decedent, *with* Tarneja Decl. Ex. 91, District Attorney Documents ("D.A. Docs.") at LG4021 (mentioning no evidence of forced entry to residence or that its contents had been disturbed), LG4040 (no evidence of disturbing contents of residence, including furniture). More significant is that many of the allegedly "omitted, exculpatory" facts were actually presented by the LAPD to the Deputy District Attorney when she was deciding whether to seek the arrest warrant. *See, e.g.*, *compare* Wang SGF ¶ 539-541 (claim omitted facts regarding Plaintiff making phone calls and sending text messages during the relevant period on April 17, 2012), *with* Briscoe Decl. at Ex. A, Murder Book at LG4253-LG4254 (Plaintiff's phone records on the same date).

Plaintiff has identified a few facts that appear to have been omitted from the materials submitted to the District Attorney or Judge Dohi as part of the request for a warrant. For example, Plaintiff notes the omission of interviews of several persons who saw her on the day of Decedent's death, both before and after she discovered Decedent; they did not recall any unusual or suspicious behavior by Plaintiff. *See, e.g.*, City Defendants' SGF ¶¶ 321 (Sheriff's station personnel), 327 (college tennis coach), 330 (Plaintiff's manicurist), 332 (Detective McCarty). Plaintiff also notes that City Defendants omitted other facts, including: (1) witness statements that Plaintiff was upset, in shock, crying or sobbing (*id.* ¶ 162); (2) Plaintiff was not evasive, untruthful or nervous when Detective McCarty interviewed her on the night of the incident (*id.* ¶ 175); and (3) one of the responding LAFD agents told City Defendants that he had determined that Decedent had died approximately two hours before Plaintiff's reported arrival at the residence (*id.* ¶ 300).

Considering the record as a whole, Plaintiff has not met her burden of demonstrating that "'the magistrate would not have issued the warrant with false information redacted, or omitted information restored'" in the manner claimed by Plaintiff. *Smith*, 640 F.3d at 937 (quoting, in part, *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126 (9th Cir.1997)). The LAPD Officers presented the Deputy District

---

[11] Similarly, there is no due process right to depose or interview all potential witnesses. *See U.S. v. Smith*, 136 F. App'x 55, 58 (9th Cir. 2005) (no due process violation where potential witnesses deported before interview absent showing that government acted in bad faith and a "plausible showing" that the potential witness could have provided testimony that would have been both material and favorable to the defense); *Devereaux v. Abbey*, 263 F. 3d 1070, 1076 (9th Cir. 2001) (no due process right to have child witness testify in child sexual abuse case).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

Attorney with a full copy of all five binders of the "Murder Book" containing the details of the homicide investigation. Briscoe Decl. ¶¶ 4, 30; *see also id.* at Ex. A,  Murder Book. Those binders contained substantial details sufficient to support a finding of probable cause. *See, e.g.,* D.A. Docs. at LG 4042 (information regarding the previous elder abuse complaint filed by Dr. Erhart, in which Plaintiff was identified as the suspected abuser); *id.* at LG4041 (Decedent's podiatrist's statements regarding meeting with Plaintiff after Decedent's death and Plaintiff's demeanor and statements); Murder Book at LG4264-LG4364 (numerous witness interviews); *id.* at LG 4365-LG4424 (same).

Omitted or false information has been found material where it was relevant to the underlying charges or central to the probable cause determination. *See, e.g., Liston,* 120 F. 3d at 972-75 (when persons who moved into new home were incorrectly arrested, officer's omission of "for sale" sign on property was material because its inclusion would have put a magistrate judge on notice that a change in occupancy would occur soon such that special consideration should have been given whether the evidence supporting warrant was stale or otherwise insufficient); *Blankenhorn v. City of Orange,* 485 F.3d 463, 483 (9th Cir. 2007) (even if omission of use of force in police report was purposeful, it was not material because this was not legally relevant to or the basis for underlying trespassing claim). Here, the allegedly "false" or "omitted" facts have little or no effect as to the probable cause determination. Therefore, even if the allegedly omitted information had been included, and the allegedly false information had been corrected, the outcome would have been the same with respect to the issuance of the warrant.

*                *                *

For these reasons, there is no genuine issue of material fact as to the issues that underlie Plaintiff's false arrest claims. They fail as a matter of law. *See Smith,* 640 F.3d at 937-38 (summary judgment on false arrest claim proper because "even if [the officer] falsified and omitted this information (as [the plaintiff] contends), the corrected report and warrant application would still have contained facts sufficient to establish probable cause to arrest" the plaintiff); *Henry v. Bank of Am. Corp.,* 522 F. App'x 406, 408 (9th Cir. 2013) (where officers entitled to qualified immunity regarding section 1983 false arrest claim, because "it is *reasonably arguable* that there was probable cause for arrest." Therefore, the Motion for Summary Judgment by the City Defendants as to Plaintiff's false arrest claims is **GRANTED**.

<blockquote>

(b)    Plaintiff's False Arrest Claims Against Wang

*(i)  Whether Wang "Recklessly" or "Intentionally"
Falsified the Autopsy Report*

</blockquote>

Plaintiff's claims against Wang arise from the autopsy report that he prepared. Plaintiff contends that Wang falsified this report by changing the manner of death from "pending investigation" to "homicide" as well as by misstating and omitting material information. *See* FAC ¶ 15; Opp., Dkt. 98 at 15-16. Plaintiff alleges that Wang knew that a determination that Decedent's manner of death was "homicide" would result in Plaintiff's arrest. *See* Wang SGF ¶ 438. She also contends that Wang omitted numerous important facts from the autopsy report, including those that would support her theory that Decedent's death was an accident.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

To sustain a section 1983 claim against Wang, Plaintiff must show that he falsified the autopsy report, and that he did so through conduct that was either "reckless" or "intentional." *Galbraith*, 307 F.3d at 1126. Plaintiff has not presented evidence sufficient to show a triable issue of fact as to either of these positions. Moreover, even if there were evidence sufficient to show a triable issue of fact as to whether Wang's autopsy report contained incorrect facts or omitted material ones, if his actions were simply negligent or inadvertent, Plaintiff's claim would fail. *See Davis*, 714 F.2d at 899 n.5. Moreover, even if it were assumed that Wang "recklessly" or "intentionally" falsified the autopsy report and that this resulted in a constitutional violation, Wang would still have qualified immunity if a reasonable coroner in his position would have thought his actions were lawful. *See Ashcroft* 131 S. Ct. at 2083.

For the reasons stated below, Plaintiff's false arrest claims fail because there is insufficient evidence to show a triable issue of fact as to whether Wang acted either in a reckless manner in preparing the autopsy report or with the intent to prepare a false report. This claim is also barred by the doctrine of qualified immunity.

> *(ii) Allegedly Changing the Manner of Death from "Pending Investigation" to "Homicide" Absent Additional Explanation*

As noted, Plaintiff asserts that when Wang changed the manner of death in the autopsy report he acted unlawfully. In support of this position, Plaintiff claims that Wang did not conduct any additional work, make any new findings, or provide any new explanations between the time that he initially stated that the cause of death was still being considered and when he changed the manner of death to "homicide." *See* Opp. at 38, 15-16. Plaintiff asserts that this is sufficient to show a triable issue as to whether Wang falsified the report. *Id.*; *see also*, Wang SGF ¶ 414.

In support of her position, Plaintiff proffers the testimony of Dr. Sheridan. He testified that he "certainly would" explain in the autopsy report the reason for changing a manner of death to homicide because such explanation was required. Tarneja Decl. at Ex. 43, Plaintiff's Excerpts of Dr. Sheridan's Deposition ("Dr. Sheridan Depo. Excerpts") at 125-29. Plaintiff also relies on a statement in the National Association of Medical Examiners Forensic Autopsy Performance Standards ("NAME Standards").[12] It is to the effect that a forensic pathologist should "include a list of the diagnoses and interpretations in forensic autopsy reports," and that autopsy reports should "include descriptions of findings in sufficient detail to support diagnoses, opinions, and conclusions." Opp. at 16; Wang SGF ¶ 416. Plaintiff also relies on the report of Dr. Oliver[13] to support this position. *See* Wang SGF ¶ 416; Tarneja Decl. at Ex. 2, Excerpt of Dr. William Oliver Report at 29. Finally, Plaintiff asserts that, as explained in the Guide for Manner of Death Classifications, to classify a death as a "homicide" a certainty of 90% or higher is generally required. Wang SGF ¶ 77.

On April 24, 2012, Wang did not conclusively determine the cause or manner of the death. *See*

---

[12] Because the NAME Guide for Manner of Death Classification does not establish a factual issue as to whether the autopsy was falsified or fell below an appropriate standard, Defendants' hearsay objection to its admission for purposes of the present motions, is not addressed.
[13] Oliver is an expert who was retained by the LAPD Officers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

Wang SGF ¶ 306; *contrast*, *e.g.*, *Lacy v. County of Maricopa*, 631 F. Supp. 2d 1197 (D. Ariz. 2008) (medical examiner changed initial opinion that wound was too small to be created by .45 caliber bullet after talking with prosecutor); *Sommer v. United States*, 713 F. Supp. 2d 1191, 1205 (S.D. Cal. 2002) (medical examiner relied on forensic testing results he knew or should have known were unreliable to conclude victim's death was a homicide). Instead Wang used the placeholders of "deferred" as the cause of death and "pending investigation" as the manner of death. *Id.* It is undisputed that temporary designations are common practice in autopsies "when further information is needed to determine cause or manner of death." *Id.* ¶¶ 80-83. Similarly, it is undisputed that when this occurs, the "medical examiner will wait until the investigation has been completed before ascribing one of the five options for manner of death classification." *Id.* ¶ 82.

Plaintiff has failed to present evidence sufficient to show that there is a triable issue of fact with respect to potential liability arising from the change of the cause of death in the autopsy report. Thus, there is no evidence that the change to "homicide" was inconsistent with any recognized practice of coroners or that it is one that a reasonable coroner would not have made. It is undisputed that there is no national standard governing the change at issue. Sheridan does not dispute this; he conceded that it is "more a matter of [how] individual offices" practice. Jacobs' Decl. at Ex. E, Additional Excerpts of Dr. Sheridan's Deposition ("Sheridan Depo. Additional Excerpts") at 256. Sheridan also acknowledged that, in preparing an autopsy report, lengthy explanations are neither required nor routine. *Id.* at 84. Sheridan also concedes that, although he would have reached a different conclusion, a reasonable forensic pathologist could have considered some facts in the medical examination, including the large number of injuries to Decedent, as consistent with a homicide. *Id.* at 294. It is also undisputed that, as shown by Oliver's report, Wang's autopsy report did not fall below any NAME Standard and otherwise met or exceeded 85 of the NAME Standards. Wang SGF ¶ 416; Jacobs' Reply Declaration ("Jacobs' Reply Decl."), Dkt. 117 at Ex. K, Oliver's Full Report at 3-4. Finally, although the Guide for Manner of Death Classification sets a 90% or higher certainty as the generally accepted level of certainty for classifying a death as a homicide, it also states that its recommendations "are not standards and should not be used to evaluate the performance of a given certifier in a given case." Wang SGF ¶ 77; Jacobs' Reply Decl., Ex. M, Guide for Manner of Death at 1-2.

For these reasons, Plaintiff has not shown a triable issue of fact as to this basis for her claim.

> *(iii) Allegedly Omitting and Misstating Facts in the Autopsy Report*

Plaintiff next argues that Wang misstated and omitted certain, important facts. Thus, she contends that the autopsy report omits the following: (1) the absence of defensive wounds; (2) the absence of any impact marks on the Decedent's skull; (3) that the Decedent may have suffered a heart attack; (4) a lesion in the Decedent's mouth; (5) the numerous contacts between Wang and the LAPD; and (6) the abrasions and contusions on Decedent were consistent with an accidental fall. She also contends that the report misstated the number of injuries and mislabeled a single injury as three separate wounds.[14] Plaintiff argues that this evidence is sufficient to show a triable issue

---

[14] Plaintiff also notes, and Wang does not dispute, that the time of death was omitted from the autopsy report. Wang SGF ¶ 444. However, Plaintiff has not offered any evidence that would support a showing that Wang formed any opinion regarding that matter.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

with respect to whether the autopsy report was false. Opp. at 16-17.

Plaintiff has not identified any requirement that an autopsy report include a description of any defensive wounds, impact marks and potential alternate causes of death, such as a heart attack. For this reason, there has been no showing that, in determining and stating the cause and manner of death, a reasonable coroner must address all alternative theories. Consequently, there has been no showing that there is a triable issue of fact as to whether the report was false. Plaintiff has offered Sheridan's testimony that, when there has been a suggestion that a decedent was struck repeatedly with a sharp object thereby implying a possible homicide, it may be appropriate in an autopsy report to note the absence of defensive wounds. Sheridan Depo. Excerpts at 103-104, 106-107. However, this testimony is not supported by any professional literature that applies to the manner in which coroners should prepare autopsy reports. For this reason, it is not sufficient to show a material issue of fact as to whether the autopsy report was false.

Plaintiff next argues that Sheridan's testimony supports the conclusion that it was below the standard of care for a medical examiner to conclude that the Decedent's death was a homicide. *See* Opp. at 27. There was no testimony by Sheridan that supports this position. Rather, he opined that the presence of a lesion in Decedent's mouth precluded the finding of a homicide. From this he opined that the failure to mention or address this lesion in the autopsy report fell below the standard of care that applies to coroners. Dr. Sheridan Depo. Excerpts at 302. However, this evidence does not show a triable issue as to whether Wang intended to deceive those who read his report.

Furthermore, Plaintiff's position mischaracterizes the autopsy report. The report refers to a lesion in Decedent's mouth, and includes a description and photograph of the wound. The Parties agree that the report states that "[t]here is a 1 x ¾" herpemic area in the upper buccal gingivia region, consistent with inflammation." Wang SGF ¶ 58; Dr. Yulai Wang Declaration ("Wang Decl."), Dkt. 65, at Ex. F, Autopsy Report at 8. That the photograph is included in the report is also undisputed. *See* Wang SGF ¶ 61. The report concludes that the lesion was the result of inflammation. Nonetheless, Plaintiff contends that the language in the autopsy report is insufficient to identify the issues associated with the lesion. Once again, this disagreement about the language that is appropriate to describe a condition and its relationship to the cause of death is not sufficient to create a triable issue of fact as to claimed material omissions. Thus, it does not support such a conclusion as to whether Wang intended to present a false report or whether he was reckless in its preparation. Sheridan Depo. Excerpts at 106-107. In this respect, it is telling that Sheridan did not opine that Wang acted "recklessly" in performing and reporting on the autopsy. Sheridan Depo. Additional Excerpts at 263.

No more persuasive is Plaintiff's argument that, because Wang did not record all contacts that he had with the LAPD, a triable issue is presented as to either his intent to prepare a false report or his alleged reckless preparation. Plaintiff contends that, because no reasons are given for changing the cause of death, that there were numerous contacts between Wang and the LAPD supports the inference that he altered the report in response to the LAPD's investigation. Once again, this very sparse evidence is not sufficient to create a triable issue of fact. It calls for speculation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

Equally unavailing are Plaintiff's arguments based on what she contends was an exaggeration of Decedent's injuries in the autopsy report. Plaintiff has offered no evidence that Wang's method of calculating the number of injuries was improper. *See* Wang SGF ¶ 432 (citing only Wang's autopsy report as evidence of his improper counting of Decedent's injuries). Further, that another coroner may have determined that there were fewer wounds is not sufficient to show a triable issue as to whether Wang falsified the report or created it recklessly. Moreover, the bulk of the proffered evidence in support of the contrary position is an interpretation of Wang's findings.

Finally, the only fact Plaintiff identifies as having been "misstated" in the autopsy report is its failure to state that abrasions and contusions suffered by the Decedent were consistent with an accidental fall. But, the abrasions and contusions are noted in the report. *See* Autopsy Report at 5-6 (noting abrasion of bridge of nose, abrasion of right hand dorsum, two contusions of fingers on right hand, abrasion on left hand dorsum, abrasion of right knee, and superficial skin avulsion of right lower leg); Wang Decl. at Ex. G, Photographs of Abrasions and Contusions. Although Plaintiff contends these injuries were the result of an accidental fall, this is not sufficient to show the presence of a triable issue as to a false report or one created recklessly. Instead, it reflects a disagreement between experts' explanation of Decedent's injuries.

For all of these reasons, no triable issue of fact has been presented with respect to whether Wang intentionally falsified the autopsy report or created it recklessly. Therefore, Plaintiff's false arrest claim based on Wang's alleged conduct fails. *See Galbraith*, 307 F.3d at 1126.

*(iv)  Whether Wang Is Entitled to Qualified Immunity*

Plaintiff argues that when a coroner falsifies an autopsy report or prepares it recklessly, there is no qualified immunity. This is because the coroner could not reasonably conclude that such conduct would be lawful and immunized. *See* Opp. at 38. Because there is no triable issue with respect to false or reckless conduct in connection with the autopsy report, Wang is protected by qualified immunity. Thus, there is not a triable issue of fact as to whether he exercised reasonable professional judgment and discretion in preparing the autopsy report. *See Lawyer*, 721 F.2d at 635.

\*          \*          \*

For all the reasons above, Wang's Motion for Summary Judgment as to Plaintiff's claims for false arrest is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

    b)    Plaintiff's Malicious Prosecution Claims[15]

        (1)    <u>Legal Standard</u>

            (a)    Malicious Prosecution

"To establish a cause of action for malicious prosecution in California, a plaintiff must show that 'the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was (1) pursued to legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice.'" *McCubbrey v. Veninga*, 39 F.3d 1054, 1055 (9th Cir. 1994); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir.1995) ("Malicious prosecution, by itself, does not constitute a due process violation; to prevail [plaintiffs] must show that the defendants prosecuted [them] with malice and without probable cause, and that they did so for the purpose of denying [them] equal protection or another specific constitutional right."). The underlying proceedings have terminated favorably to plaintiff if they demonstrate or indicate the innocence of the party who is the plaintiff in the malicious prosecution action. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1068 (9th Cir. 2004) ("An individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence."). "'[A] resolution of the underlying action that leaves some doubt as to the defendant's innocence or liability is *not* a favorable termination, and bars that party from bringing a malicious prosecution action against the underlying plaintiff.'" *White v. Allstate Ins. Co.*, 99 F.3d 1148, at *14 (9th Cir. 1996) (quoting *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992)).

"[A] decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes *prima facie*—but not *conclusive*—evidence of probable cause." *Awabdy*, 368 F.3d at 1067 (italics in original). "Among the ways that a plaintiff can rebut a prima facie finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* "[L]ike false arrest claims, probable cause is an absolute defense to malicious prosecution." *Smith*, 640 F. 3d at 944; *see also*, *Echante v. Cnty of Mono*, 299 F. App'x 732, 733-34 (9th Cir. 2008) (false arrest, imprisonment and malicious prosecution claims all properly dismissed "because probable cause supported the arrest.").

"A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff." *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) (citations omitted). Similarly, "where police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." *Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir. 1981).[16]

---

[15] The Parties dispute whether Plaintiff can assert a claim for false arrest or malicious prosecution under the Fourteenth Amendment. *See* City Defendants' Mem. at 11, 15; Opp. at 32 n.3. Whether such claims are viable here depends on whether Plaintiff can advance claims for false arrest under the Fourth Amendment and state law. As explained, *infra*, each of these claims fails as a matter of law. Therefore, it is unnecessary to determine whether Plaintiff can maintain a cause of action for malicious prosecution under the Fourteenth Amendment.
[16] The Ninth Circuit has questioned the continuing validity of *Smiddy* in light of the later decision in *Hartman v. Moore*, 547 U.S. 250 (2006). *See Beck*, 527 F.3d at 864 ("After *Hartman*, it is questionable that *Smiddy I*'s

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
| Title | Lois Goodman v. Los Angeles Police Department | | |

The Ninth Circuit has identified several circumstances in which the presumption of independent judgment may be rebutted. They include: (1) "the prosecutor was pressured by police or was given false information," (2) "the police 'act[ed] maliciously or with reckless disregard for the rights of an arrested person,'" (3) "the prosecutor 'relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment on the existence of probable cause for the arrest;'" or (4) "the officers 'otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.'" *Beck*, 527 F.3d at 862-63 (citing *Smiddy*, 665 F.2d at 267, and *Awabdy*, 368 F.3d at 1067) (citations omitted). However, a plaintiff must offer more than conclusory allegations of falsity or the plaintiff's conflicting account of events to rebut the presumption of prosecutorial independence. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994) (where prosecutor's independent judgment based solely on police reports, Plaintiff's own account of events not sufficient evidence of fabrication in the reports to rebut presumption of prosecutorial independence); *Blankenhorn*, 485 F.3d at 483 ("'conclusory allegations [of falsehood], standing alone, are insufficient to prevent summary judgment' against a claim of malicious prosecution on the ground of independent prosecutorial judgment.") (relying on *Sloman*, 21 F.3d at 1474).

A plaintiff may maintain a malicious prosecution claim against those who wrongfully caused his prosecution. *See Galbraith*, 307 F.3d at 1126 ("[A] coroner's reckless or intentional falsification of an autopsy report that plays a material role in the false arrest and prosecution of an individual can support a claim under 42 U.S.C. § 1983 and the Fourth Amendment."). Recklessness under this standard is the same as the one that applies to a claim for false arrest. Thus, a coroner's misstatement must be more than "the result of simple negligence or inadvertence." *Davis*, 714 F.2d at 899 n.5.

(b)     Qualified Immunity

Qualified immunity applies to malicious prosecution claims in the same manner that it applies to those for false arrest. *See Lacey v. Maricopa County*, 649 F.3d 1118 (9th Cir. 2011) (analyzing whether defendant entitled to qualified immunity on both false arrest and malicious prosecution claims); *Dirks v. Martinez*, 414 F. App'x 961, 962 (9th Cir. 2011) (same); *Scannell v. Cnty of Riverside*, 152 Cal. App. 3d 596, 604 (Cal. Ct. App. 1984) (detective acting within scope of his employment is immune under Section 815.2 to malicious prosecution claim; accordingly, his public entity employer is also immune); *Blackburn v. Cnty of Los Angeles*, 42 Cal. App. 3d 175, 177 (Cal. Ct. App. 1974) (public entity immune where public employee immune).

(2)     Application

(a)     Whether the Underlying Suit Terminated in Plaintiff's Favor

It is undisputed that the District Attorney dismissed the underlying criminal proceeding on November

---

detailed evidentiary inquiry . . . should still be employed"). However, subsequent to the decision in *Beck*, the Ninth Circuit applied both *Smiddy* and *Hartman*. *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1136-137 (9th Cir. 2009) (noting *Beck* was decided after the briefs were filed and oral argument heard, and relying on both *Smiddy* and *Hartman*). Because the viability of *Smiddy* is not determinative of the issues presented in this action, the Court does not need to determine whether it continues to be viable as a result of *Hartman*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

30, 2012. At that time it was stated that the matter was dismissed "in order to consult with additional experts and further investigate the case." City Defendants' SGF ¶ 572. The dismissal of a criminal proceeding can constitute favorable termination for purposes of a malicious prosecution claim. *Awabdy*, 368 F.3d at 1068. However, where the criminal proceeding has been dismissed without prejudice to its being re-filed and without a direct statement about the innocence of the criminal defendant or one from which that can reasonably be inferred, such a dismissal is not necessarily deemed one that was favorable to the plaintiff.

Here, the dismissal was accompanied by the explanation that further investigation was needed. More than two years have passed since this announcement, but no new or renewed charges have been brought against Plaintiff. This constitutes some evidence from which an inference of innocence could be drawn, notwithstanding the other explanations that have been presented by Defendants. Thus, there is a triable issue of fact as to the favorable termination element of this claim. *Cf. Maleki v. LAUSD,* 160 F. App'x 586, 589 (9th Cir. 2005) (distinguishing *Awabdy*'s holding regarding dismissal of malicious prosecution claims and finding summary judgment proper where Plaintiff failed to present evidence of a favorable termination of underlying proceedings); *White v. Allstate Ins. Co.*, 99 F.3d 1148, at *14.

       (b)    Whether Plaintiff's Malicious Prosecution Claims Against City Defendants Satisfy the Remaining Elements

           *(i)  Whether City Defendants Had Probable Cause*

As explained above, even if the allegedly false and omitted information in Defendants' reports were excluded or corrected, there remained sufficient evidence to support a finding of probable cause to issue a warrant for Plaintiff's arrest. The Murder Book contained details about the entire investigation, including prior allegations of elder abuse of Decedent, statements made during witness interviews regarding Plaintiff's behavior, and other evidence that supported the decision to arrest and charge Plaintiff. For these same reasons, there is no triable issue as to whether there was probable cause to initiate the challenged prosecution of Plaintiff. For these reasons, Plaintiff's malicious prosecution claim against City Defendants fails as a matter of law.

           *(ii)  Whether City Defendants Are Insulated by the Prosecutor's Exercise of Independent Judgment*

The City Defendants are also insulated from liability because the District Attorney exercised independent judgment in deciding to pursue the criminal proceeding. Plaintiff disputes this position. She argues that any presumption as to the exercise of independent judgment is overcome because the District Attorney relied only on the Murder Book binders, which Plaintiff claims contained false statements and material omissions. Opp. at 35-36. Plaintiff has not raised a triable issue of fact as to this claim.

The affidavit that was presented in support of the application for an arrest warrant states that it is based only on the Murder Book binders. *See* Briscoe Decl. at Ex. D, Warrant Declaration. In support of Plaintiff's position, she relies on cases in which evidence was presented demonstrating that the reports on which a prosecutor relied contained false statements. *See, e.g., Sloman*, 21 F.3d at 1474 (fabrication was material where "police reports on which prosecutors relied contained demonstrable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

omissions, were contradicted by other police reports, and, most importantly, were contradicted by independent witnesses who corroborated the plaintiff's version of events") (relying on *Barlow*, 943 F.2d at 1136 and *Borunda*, 885 F.2d at 1390). Plaintiff has proffered no such evidence. Instead she relies only on her own unsupported contentions and conclusory statements. Although Plaintiff asserts that several facts presented in support of the warrant were "false," she has provided no admissible evidence to support this position. Among other things, there is no evidence presented as to what Plaintiff contends were the actual facts or as to those issues about which she claims false statements were made.

As explained above, even if the information in the Murder Book provided to the District Attorney and Judge Dohi were changed to conform with Plaintiff's contentions, its contents would still provide evidence sufficient to show the absence of a triable issue of fact as to whether there was a sufficient basis for the determination made by the District Attorney. For example, Plaintiff's position would not alter the evidence as to Plaintiff's behavior surrounding the incident and past elder abuse allegations. Because such evidence was sufficient to establish probable cause for Plaintiff's arrest and prosecution, the claimed misstatements or omissions were not material.

Because the presumption of prosecutorial independence has not been rebutted, and because the "false" or "omitted, exculpatory" facts are not material to the finding of probable cause, the City Defendants are insulated from liability. *See Sloman*, 21 F.3d at 1474; *Blankenhorn*, 485 F.3d at 483.

(c)     Plaintiff's Malicious Prosecution Claims Against Wang

Even if it were determined that the criminal proceedings terminated in Plaintiff's favor, her claims against Wang would fail. The standard for a malicious prosecution or a false arrest claim against a coroner is the same as that discussed above. *See Galbraith*, 307 F.3d at 1126. Because there is not a triable issue of fact as to whether Wang "recklessly" or "intentionally" falsified the autopsy report, he is entitled to qualified immunity. For these independent reasons, Plaintiff's malicious prosecution claims against Wang fail.

(3)     <u>Disposition</u>

For all the reasons stated above, as to the malicious prosecution claim, the Court **GRANTS** both the City Defendants' Motion for Summary Judgment and Wang's Motion for Summary Judgment.

c)     Plaintiff's *Monell* Claims

(1)  Legal Standard

A municipality does not have respondeat superior liability for the actions of its employees that allegedly violate a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Municipal liability under section 1983 may arise when a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or 'longstanding practice or custom which constitutes the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA 2:13-CV-05959-JAK-MAN | Date | April , 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

'standard operating procedure' of the local governmental entity.'" *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992) (quoting, in part, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Municipal liability may also arise when the employee who committed the constitutional violation was an official with "'final policy-making authority' and that the challenged action itself thus constituted an act of official government policy." *Id.* There may also be liability where a municipal employee is "an official with final policy-making authority [who] ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346-347.

Where a public official committed no constitutional violation, there can be no resulting *Monell* liability for the municipality. *See Los Angeles v. Heller,* 475 U.S. 796, 799 (1986). However, where a public official is entitled to qualified immunity based only on the absence of a clearly established constitutional right, a municipality may still have *Monell* liability. *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1186 n. 7 ("a municipality may be liable if an individual officer is exonerated on the basis of the defense of qualified immunity, because even if an officer is entitled to immunity a constitutional violation might still have occurred") (citing *Chew v. Gates,* 27 F.3d 1432, 1438–39 (9th Cir.1994)); *see also Estate of Esquivel v. Chavez,* 2008 WL 4821714, at *25 (E.D. Cal., Nov.4, 2008).

(2) Application

Plaintiff has presented no evidence of a policy or custom of the LAPD that could form the basis for *Monell* liability. There is no triable issue of fact with respect to whether the LAPD Officers denied Plaintiff of any constitutional rights; there was probable cause for her arrest and subsequent prosecution. Nor is there evidence of ratification of a violation of a recognized right or the denial of a right that has not yet been clearly recognized. *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008).Therefore, Plaintiff's *Monell* claims, fail as a matter of law. *Heller,* 475 U.S. at 799.

For the foregoing reasons, the Court **GRANTS** the City Defendants' Motion for Summary Judgment as to Plaintiff's *Monell* Claims.

d)  The Claims for Intentional Infliction of Emotional Distress

(1)  Legal Standard

"Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sabow v. U.S.*, 93 F.3d 1445, 1454-455 (9th Cir. 1996) (relying on *Christensen v. Superior Court,* 54 Cal.3d 868, (1991) (quotations and citations omitted)). "The conduct must not only be intentional and outrageous, but must also be 'directed at plaintiff, or occur in the presence of a plaintiff of whom defendant is aware.'" *Id.*

Under the California Tort Claims Act, direct tort liability must be based on a specific statute creating such liability. Cal. Gov. Code § 815(a) ("Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person"); *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1182

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | LA CV13-05959 JAK (MANx) | Date | April 16, 2015 |
|---|---|---|---|
| Title | Lois Goodman v. Los Angeles Police Department | | |

(2003). "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from [Section 815.2], have given rise to a cause of action against that employee or his personal representative" Cal. Gov. Code § 815.2(a). Similarly, "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov. Code § 815.2(b); *accord* Cal. Gov. Code § 815(b).

(2)  Application

Plaintiff has not opposed the motions for summary judgment with respect to her claims for intentional infliction of emotional distress. At the hearing, Wang's counsel stated that Plaintiff's counsel had agreed voluntarily to dismiss this claim during the meet and confer process. *See* Wang Mem. at 12 n.1.

During the hearing, Plaintiff's counsel stated their intention to pursue this claim against the LAPD Officers. As noted, to do so Plaintiff must rely on a statute that creates such potential liability. *See* Cal. Gov. Code § 815. Plaintiff has not explained the basis upon which this statute would support her claims. Further, the only evidence proffered by Plaintiff in support of the claim concerns the media coverage and appearances of officers on news media in connection with Plaintiff's arrest. *See* City Defendants' SGF ¶¶ 433, 434, 439, 440, 441, 443, 445. This evidence is not sufficient to show a triable issue of fact as to the claim of intentional infliction of emotional distress. Among other things, there is no evidence that this conduct was outrageous or that it caused harm to Plaintiff. Moreover, in the First Amended Complaint, these claims are premised on those for false arrest. *See* FAC ¶ 70. Because those claims fail, they cannot provide the predicate for this one.

*                                   *                                   *

For these reasons, the Court **GRANTS** both the City Defendants' Motion for Summary Judgment and Wang's Motion for Summary Judgment as to Plaintiff's Intentional Infliction of Emotional Distress Claims.

## IV.   <u>Conclusion</u>

For the reasons stated in this Order, City Defendants' Motion for Summary Judgment is **GRANTED** as to all causes of action and Dr. Wang's Motion for Summary Judgment is **GRANTED** as to all causes of action. Counsel shall confer and lodge an agreed upon form of judgment by April 30, 2015. If it is determined that the parties are not able to agree on a proposed judgment, Defendant shall lodge a proposed judgment by April 30, 2015, with Plaintiff to file any objections on or before May 7, 2015.

**IT IS SO ORDERED.**

_____ :  _____

| Initials of Preparer | ak |
|---|---|